IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER HUBER, | ) |
| Plaintiff, | ) |
| v. | ) No. 19-cv-5337 |
| FOX VALLEY PARK DISTRICT, | ) Judge John J. Tharp, Jr. |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Huber brings this suit against her former employer, Fox Valley Park District ("FVPD"), for violations of the Age Discrimination in Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA"). Huber alleges that she was forced to resign from her position with the FVPD, her employer of twenty-four years, after her new supervisor discriminated against her because of her age. Currently before the Court is FVPD's motion to dismiss Huber's complaint in its entirety. For the reasons discussed below, the motion to dismiss is denied.

### BACKGROUND[1]

Jennifer Huber was employed as the Recreation Supervisor of the Active Adults Department in the Fox Valley Park District Prisco Community Center ("Prisco") until her resignation in February 2018. Compl. ¶ 16, ECF No. 19. Huber is 52 years old and had worked for

---

[1] For the purposes of this motion, the Court accepts all of the plaintiff's factual allegations as true and draws all reasonable inferences in her favor.

the FVPD for twenty-four years at the time of her resignation. *Id.* at 1; Pl.'s Resp. at 2, ECF No. 25.

A little less than a year prior, in April 2017, the FVPD hired Krista Mulready as the new Prisco Facilities Manager, in which capacity she supervised all Prisco employees, including Huber. Compl. ¶ 21. Mulready was approximately 32 years old when she took charge at Prisco. *Id.* ¶ 21. Soon thereafter, Huber alleges that working conditions for older employees became intolerable. *Id.* ¶ 35. According to the complaint, Mulready demonstrated a preference for working with younger employees, was often hostile and rude to older employees, and embarrassed older employees by directing them to seek information from younger employees, rather than sharing information with her entire staff. *Id.* ¶¶ 24-27. Further, Mulready assigned more responsibilities to older workers, made their jobs more physically challenging, and referred to them as "stale" or "stagnant" as compared to the younger employees, who were "new blood." *Id.* ¶¶ 28-29. Within a year of Mulready's arrival at Prisco, approximately twelve older employees and volunteers had left FVPD. *Id.* ¶ 36.

Huber became the subject of Mulready's alleged ageism as well. *Id.* ¶¶ 37-38. For many years, Ms. Huber's father had taught a class for the Active Adults Department under Prisco's Performing Arts Manager. *Id.* ¶ 40. In late 2017, Mulready formally disciplined Huber for violating the nepotism policy because of her father's class. *Id.* ¶ 44. Huber complained to FVPD's Human Resources Department about the disciplinary charges to no avail. *Id.* ¶ 48.

A few months later, Huber received a performance evaluation from Mulready, which included three ratings of "needs improvement" out of thirty categories. *Id.* ¶ 50. In the past, Huber had received consistently positive evaluations and repeated merit-based salary increases. *Id.* ¶¶ 19-20. In January 2018, based on her evaluation, Mulready placed Huber on a performance

2

improvement plan ("PIP"). *Id.* ¶ 52. The PIP stated that Huber's performance was "stale" and that her "continued employment with the district is in jeopardy." *Id.*

A week after receiving the PIP, Mulready issued Huber a new job description that effectively tripled her normal responsibilities. *Id.* ¶¶ 55-56. In the position she held at that time, Huber oversaw planning, budget, and marketing recreation for Active Adults. *Id.* ¶ 56. The new job description extended those same responsibilities to early childhood and camp recreation. *Id.* Huber believed that Mulready was setting her up for failure. *Id.* ¶ 57. After deliberating on her decision, she notified FVPD that she felt she was being forced out and had no choice but to resign. *Id.* ¶ 58.

While Huber's resignation was pending, 80 members of the Active Adult community at FVPD signed a petition, requesting that FVPD reject Huber's resignation and retain her in her current position. *Id.* ¶ 59. In response to the petition, FVPD offered Huber a part-time job at half of her former salary and without benefits. *Id.* ¶ 60. Huber considered the offer offensive and rejected it. *Id.* ¶ 61. Soon after Huber's last day of work, March 9, 2018, FVPD posted a vacancy announcement for Huber's position, without the added responsibilities for early childhood and camp recreation. *Id.* ¶ 63.

On April 9, 2018, Huber filed a charge with the EEOC, complaining of age discrimination. The EEOC cross-filed it with the Illinois Department of Human Rights ("IDHR"), which investigates age discrimination claims under the IHRA. *Id.* ¶ 5. On May 16, 2019, Huber received a right-to-sue letter from the EEOC. *Id.* ¶ 7. On August 7, 2019, she filed this suit in federal court. *Id.* ¶ 8. On October 16, 2019, Huber submitted a copy of the EEOC's findings to the IDHR. Def.'s Ex. 1, ECF No. 23-1 at 7. FVPD now moves to dismiss the complaint in its entirety.

**DISCUSSION**

Huber advances her age discrimination claim under both the ADEA (Count I) and the IHRA (Count II). The parties acknowledge, however, that the legal standards governing age discrimination claims under these statutes are the same, so the Court concludes that there is no need to address the parties' dispute about whether Huber's claim under the IHRA is barred for failure to exhaust her state administrative remedies.

**I.      Age Discrimination Under the ADEA**

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (2016). To bring a claim under the ADEA, the employee must show that (1) she was older than forty; (2) her job performance was satisfactory; (3) "despite [her] satisfactory performance [she] suffered a materially adverse employment action;" and (4) the employer "treated others outside the protected class more favorably than [the plaintiff] was treated." *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 134-35 (7th Cir. 1993).

The parties' dispute over the ADEA theory of liability boils down to one issue: whether Huber suffered an adverse employment action. Huber maintains that she was constructively discharged, which constitutes an adverse action under the ADEA. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). FVPD counters that Huber has not made a plausible showing of constructive discharge and, in truth, voluntarily resigned from her position.

Constructive discharge occurs when an employee is forced to resign because her working conditions, from the perspective of a reasonable employee, have become intolerable. *Id.* at 679. There are two types of constructive discharge: (1) resignation due to discriminatory harassment and (2) resignation based on an employer's communication or action suggesting termination is

4

imminent and inevitable. *Id.* Neither form of constructive discharge displaces the requirement that a plaintiff must show that her working environment had become unbearable. *Id.*

### A. Constructive Discharge Based on Discriminatory Harassment

The first form of constructive discharge demands a particularly egregious level of harassment, even more so than that required for hostile work environment, because an employee is expected to remain in her position in the latter cause of action. *Chapin*, 621 F.3d at 679. Courts have found the constructive discharge standard satisfied in situations in which a plaintiff's personal safety was threatened or a plaintiff was subjected to highly derogatory slurs. *Id.* (citing examples of harassment-based constructive discharge, including threatened use of a noose and pointing a firearm at plaintiff's head); *Bailey v. Binyon*, 538 F. Supp. 923, 934 (N.D. Ill. 1984) (repeated use of racial epithet merited finding of constructive discharge).

In *Carlson v. CSX Transport*, 758 F.3d at 829-30 (7th Cir. 2014), the Seventh Circuit found that a female employee had adequately alleged constructive demotion[2] where she felt forced to quit a training program because she was belittled, assigned extra work, and received undeserved negative evaluations. The court warned against dismissing a harassment-based constructive discharge theory of liability on the pleadings: "The conditions Carlson described in her complaint may not ultimately qualify as intolerable, but we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.* at 830. The court concluded that the district court erred in granting the motion to dismiss because it found the allegations too "conclusory" and lacking in evidence of unbearable working conditions. *Id.* at 831. Identifying

---

[2] Constructive demotion occurs where an employee feels forced to leave a position but remains employed at the same company. *Carlson*, 758 F.3d at 824. This legal theory follows the same framework as constructive discharge. *Id.* at 830 (citing *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) ("A constructive demotion analysis should have the same structure as that for constructive discharge.")).

5

specific examples of poor treatment and tying them to an unlawful motivation sufficed at the pleading stage. *Id.*

FVPD argues that Huber has failed to allege a sufficiently hostile workplace to meet the threshold required under the first type of constructive discharge. Huber has alleged that Mulready created an intolerable working environment for older employees, specifically by making it more physically challenging for them to do their work, subjecting them to harsher disciplinary measures, and blaming older employees for younger employees' mistakes. As for her personal experience, Huber asserts that Mulready ginned up disciplinary charges against her, described her work performance as "stale," and tripled her workload responsibilities without increased pay.

It remains to be seen whether these allegations will bear out an insufferable working environment post-discovery. But under *Carlson*, as long as a plaintiff has identified "specific examples of poor treatment" connected to an unlawful motivation, her constructive discharge theory of liability will survive a motion to dismiss. *Id.* at 830. *See also Smoler v. Board of Edu. For West Northfield School District 31*, No. 20-cv-00493, 2021 WL 843454, at *7-8 (N.D. Ill. Mar. 5, 2021) (plaintiff plausibly alleged constructive discharge where colleagues falsely accused her of lying, changed her performance evaluation process, and ostracized her); *Brownlee v. Catholic Charities*, No. 16-cv-00665, 2017 WL 770997, at *5-6 (N.D. Ill. Feb. 28, 2017) (allegations of specific examples of poor treatment based on sex, including verbal harassment and being shown graphic materials, were sufficient to survive motion to dismiss).

The plaintiff has done that here. Huber has pointed to specific examples of her poor treatment, including false disciplinary charges, an unjustified negative performance evaluation, and disparaging comments about her work, all of which, she alleges, stemmed from age bias. She

has asserted that she decided to resign because these actions made continued employment intolerable. Huber has thus plausibly alleged discrimination-based constructive discharge.

Further, it is telling that FVPD cites almost exclusively to cases decided on summary judgment in support of its position.[3] *See e.g.*, *Fields v. Board of Edu. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) (affirming grant of summary judgment on constructive discharge claim); *Fischer v. Avanade*, 519 F.3d 393, 411 (7th Cir. 2008) (same); *Harbeck v. Baxter Healthcare Corp.*, 17 C 5120, 2019 WL 1382070, at *1 (N.D. Ill. Mar. 27, 2019) (granting summary judgment). As much as FVPD insists that these authorities reveal the inadequacy of Huber's allegations, it does not diminish the fact that the standard of review is inapplicable. FVPD cannot use the wrong measuring stick to obtain a judgment in its favor.

## B. Constructive Discharge Based on Imminent and Inevitable Termination

The second type of constructive discharge requires a showing that a reasonable employee would believe termination is "imminent and inevitable" based upon the employer's actions or communications. *Chapin*, 621 F.3d at 680. Put differently, this form of constructive discharge takes place when "the handwriting was on the wall and the plaintiff quit just ahead of [the] fall of the axe." *Id.* at 680. *See e.g.*, *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002) (finding plaintiff had met burden of showing constructive discharge where plaintiff returned to work to find her belongings packed and her office converted to storage).

FVPD asserts that Huber waived her argument for this type of constructive discharge due to her failure to meaningfully respond to it in her brief. Indeed, where a plaintiff fails to respond to a defendant's argument, the court will consider that argument waived. *Bonte v. U.S. Bank, N.A.*,

---

[3] The lone exception is *Ross v. UChicago Argonne, LLC*, which does not involve constructive discharge. No. 18 cv 4200, 2020 WL 2041338 (N.D. Ill. Apr. 28, 2020).

7

624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Huber, however, has responded to this argument, asserting that her work environment "became so hostile and so intolerable that a reasonable person in [her] position would have also felt that termination was imminent and compelled to resign." Pl.'s Resp. at 3, ECF No. 25. Huber cites the fact that her PIP stated that her "continued employment with the district is in jeopardy." *Id.* at 7. She also argues it was logical to infer that FVPD did not want to retain her in her current position. *Id.* at 8. Though her response may not be expansive, it is sufficient to avoid waiving the argument that she was constructively discharged on an inevitable and imminent termination theory.

Fairly read, the written warning that Huber's continued employment was in jeopardy, combined with the disciplinary charge and increased work responsibilities, support an inference that a reasonable employee would believe termination or demotion was inevitable and imminent. *Cf. Chapin*, 621 F.3d at 680 (finding no constructive discharge where defendant threatened to fire plaintiff but then retracted that statement and made repeated efforts to have plaintiff return); *Gilhooly v. UBS Securities*, 772 F. Supp. 2d 914, 918 (N.D. Ill. 2011) (no constructive discharge where plaintiff did not allege that defendant employer communicated that plaintiff would be discharged).

According to FVPD, Huber cannot support a constructive discharge theory of liability because the Park District offered her a part-time position while her resignation was pending, and therefore her termination was neither imminent nor inevitable. But that offer came, it can reasonably be inferred, only to stave off protests by patrons of the Active Adult program and so does not necessarily reflect that FVPD was not intending to sack Huber. Indeed, the complaint allows the inference that FVPD's offer of part-time employment was calculated to be rejected; as such, in alleging that FVPD made an empty gesture of seeking to retain her, Huber does not plead

herself out of court. Moreover, these allegations could support a theory of constructive demotion, in that Huber resigned after realizing losing her current position, either to discharge or demotion, was unavoidable. Though FVPD argues otherwise, Huber was not required to plead constructive demotion in her complaint to later invoke it in support of her claim. *See Bartholet v. Reishauser A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."). Whether Huber can adduce the imminence and inevitability of her termination remains a question, but one that must be deferred following discovery. At this stage, Huber has plausibly alleged a claim for relief under the ADEA based on either form of constructive discharge.

## II. Age Discrimination Under the IHRA

"The Seventh Circuit applies the same overall analysis to claims under Title VII, the ADEA, and the IHRA. *See David v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)." *Gray v. Arrow Elecs., Inc.*, No. 16-CV-09719, 2019 WL 1399945, at *3 (N.D. Ill. Mar. 28, 2019). FVPD acknowledges that the legal standards applicable under the IHRA are no different than those that govern Huber's claim under the ADEA, Mem., ECF No. 23, at 9 n.3, and offers no substantive legal analysis distinguishing the evaluation of liability under the IHRA from liability under the ADEA. That acknowledgment necessarily reflects that Huber has stated a viable claim under the state law as well. FVPD argues, however, that the claim under the IHRA discrimination theory of liability must be dismissed because Huber failed to exhaust her administrative remedies by failing to timely notify the IDHR of the EEOC's notice of dismissal. Huber, though she has no obligation to plead around an affirmative defense like failure to exhaust, takes the bait and argues that she is entitled

9

to assert a claim based on the IHRA notwithstanding IDHR's dismissal of her claim under the IHRA.

So far as the Court can see, there is no point to this argument. Whether Huber can also proceed on an IHRA theory makes no difference to the outcome of the case. Because the legal standards are the same, if Huber ultimately fails to prove her ADEA claim, her IHRA claim will necessarily fail as well; if she prevails on her ADEA claim, so too will she prevail on her IHRA theory. *See, e.g.*, *Sabet v. City of N. Chicago*, No. 16-CV-10783, 2020 WL 832360, at *18 (N.D. Ill. Feb. 20, 2020) ("Defendants concede that discrimination and retaliation claims brought pursuant to the IHRA are evaluated under the same standards and tests as those brought under Title VII. Because the Court denied summary judgment for the Title VII claims, Defendants likewise are not entitled to summary judgment on the IHRA claims as well."); *Wyman v. Evgeros, Inc.*, No. 15 C 2758, 2017 WL 386651, at *2 (N.D. Ill. Jan. 27, 2017) ("claims brought under the IHRA are governed by the same standard as federal discrimination claims. The Court therefore considers counts 1 and 2 together for the purposes of summary judgment.") (internal citations omitted).

Even were there some difference between the standards governing liability under the ADEA and the IHRA, there would still be no basis to dismiss Count II of the amended complaint. In her complaint, Huber asserts one claim—age discrimination—under multiple theories. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (cleaned up). And under Rule 12(b)(6), this Court has authority only to dismiss claims, not legal theories. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual

allegations that state a plausible claim for relief."). Because the Court has determined that the amended complaint states a plausible claim for age discrimination under at least one theory (the ADEA), it is entirely unnecessary to wade into the debate about whether Huber exhausted her administrative remedies under state law in order to assess whether her claim can go forward on a second theory as well. The time for assessing the viability of alternative theories of entitlement to relief is on summary judgment or trial, not on a motion to dismiss the complaint. *City of Angola,* 809 F.3d at 325. In the context of a motion under Rule 12(b)(6), it is enough to say that the complaint states a plausible claim for age discrimination upon which relief can be granted. That being the case, the defendant's age discrimination claim may go forward and FVPD's motion to dismiss is denied.[4]

Date: April 20, 2021

John J. Tharp, Jr.
United States District Judge

---

[4] Accordingly, the Court's denial of the motion to dismiss does not equate to a ruling that the plaintiff's claim under the IHRA is not jurisdictionally barred or that it fails on the merits, only that those arguments are not germane to the motion to dismiss because the age discrimination claim may proceed regardless of the ultimate fate of the IHRA theory.